# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADONNA GENEREUX,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>Defendant. | 1:05cv1457 DLB<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**BACKGROUND**

Plaintiff LaDonna Genereux ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

**FACTS AND PRIOR PROCEEDINGS**[2]

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 16, 2006, the action was reassigned to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff filed her application for DIB October 27, 2003, alleging disability since May 4, 1999, due to chronic headaches and irritable bowel syndrome ("IBS"). AR 45-47, 66-75. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 21-25, 27-31, 32. On February 23, 2005, ALJ William Thompson, Jr., held a hearing. AR 251-279. He denied benefits on May 27, 2005. AR 11-18. On September 16, 2005, the Appeals Council denied review. AR 4-6.

Hearing Testimony

ALJ Thompson held a hearing on February 23, 2005, in Stockton, California. Plaintiff appeared with her attorney, Sharon Kelly. Vocational expert ("VE") Stephen Schmidt also appeared and testified. AR 251.

Plaintiff testified that she was 40 years old at the time of the hearing. She graduated from high school and attended one year of college. AR 256-257.

Plaintiff last worked in 1998 doing insurance billing. She also worked writing termite reports for Terminix and as a cashier for Walgreen's. AR 258-259.

Plaintiff testified that she could not work now because she has headaches all the time. She lays in bed most of the day, sometimes for four days a week. The headaches started in 1999. In 1999, she was also treated with chemotherapy for lymphoma. AR 260-261. She finished her chemotherapy in September 1999 and it stopped her lymphoma. However, the all-over aching caused by the chemotherapy never went away. Plaintiff was also having headaches during that time. AR 262. She continues to have headaches and is treated with blood pressure medication and pain medication. When the headaches cause vomiting, she receives injections. The headaches last about two days and occur about four to five times per month. AR 262. Sometimes the medication stops the headaches. AR 263.

Plaintiff is also receiving treatment for her aching and takes vitamins and calcium. AR 263, 267. Her doctor also recommended that she walk a little each day, and she does so for about 10 minutes. AR 267.

When she was receiving chemotherapy, she would wake up in the morning, get her kids off to school and then lay back down. She could do a load of laundry or load the dishwasher, but

could not vacuum or scrub. AR 264. Now, she can do laundry, wash dishes, load the dishwasher, and cook breakfast. AR 264. Her son still does the vacuuming because Plaintiff's head starts hurting if she does it a lot. AR 264-265.

When Plaintiff was receiving chemotherapy, she could walk for 15-20 minutes at a time and stand for about 20 minutes. AR 265. She also had problems lifting things and items would fall out of her hands. AR 266. These effects lasted about two weeks after the chemotherapy treatment and would then ease up, but never go away. AR 266.

Plaintiff goes to church about twice a month, although there are times that she can't participate in the one-hour service because of headaches or her stomach. AR 267. Her husband goes with her to the grocery store. AR 268.

When questioned by her attorney, Plaintiff explained that she has IBS and that it started before her cancer diagnosis. It worsened after her chemotherapy treatment. Every time she eats, her stomach cramps up and she has to run to the bathroom. She testified that these symptoms would have an affect on her ability to work. She goes to the bathroom three times in a typical day, but it takes her about 20 minutes. AR 269. She also thought her headaches would affect her ability to work because when they get really bad, her eyes can't focus and noise and light bother her.

When her headaches don't require an injection, she takes her medication and lays down in a dark room for about an hour and a half to two hours. AR 271.

Plaintiff testified that her body aches have been diagnosed as fibromyalgia and that this diagnosis has been confirmed by a rheumatologist. AR 271-272. Her aches started in 1999 and are concentrated in her chest, legs and arms. They affect her ability to work because some mornings it's hard to get out of bed. She also has skin sensitivity to sun, heat and hot water, which is related to the fibromyalgia. AR 272-273. She estimated that she has about two good days a week, and on those days, she's able to do laundry, dishes and cook. AR 273. During the rest of the day, she reads, watches the news on television and takes naps. AR 274. She takes about three naps a week because she is tired and doesn't feel good. AR 274.

Plaintiff admitted that she could control her IBS somewhat by timing when she eats. AR 275. However, postponing a meal for a couple of hours causes her to get weak and nauseated. AR 275.

For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work. This person could lift 10 pounds occasionally and could move small objects throughout the workday. She could stand and walk in combination for periods not to exceed 30 minutes at a time, for a total of two hours per day, and could sit for the remainder of the day. She could occasionally bend, stoop, twist, squat, kneel, crawl, and climb stairs, but could not climb ladders or scaffolds. She could not be exposed to extremes of heat or cold and should not work at heights or at a job that requires exposure to the sun. This person could perform Plaintiff's past relevant office work. This person could also perform receptionist positions and work as a assembler. AR 276-277. The VE testified that his classifications of these positions are consistent with the way they are classified in the *Dictionary of Occupational Titles* ("DOT"), and that he did not have to make any departures in identifying these positions. AR 277.

Plaintiff's attorney asked about erosion of the occupational base if Plaintiff could perform only simple, repetitive tasks. The VE testified that she could still perform the assembler positions. If this person needed to take three 20-minute breaks throughout the day, she could not perform any work. AR 278.

<u>Medical Record</u>

______Medical records from May to December 1999 show that Plaintiff was treated for T-cell lymphoma. Her treatment included chemotherapy. During this time, a CT scan of the chest, an MRI of the brain and a flexible sigmoidoscopy were all negative. Plaintiff successfully completed her treatment, with no recurrence. AR 201-216, 223-250.

______From January 2002 to November 2003, Plaintiff was treated by David L. Davis, M.D., for chronic headaches, sinusitis, IBS and other complaints. AR 105-166. She received pain medications and injections for treatment of her headaches during this time. Her headaches were often accompanied by prolonged nausea and vomiting, but she was sometimes able to control

them with medication. AR 151, 153. In May 2002, she reported that she had "broken" several headaches at the onset and had been free of headaches for the past few weeks. AR 151. She was able to forego prophylactic treatment. AR 151.

In October 2002, an MRI of the cervical spine was interpreted as failing to confirm narrowing of the C-spine, but showing extensive degenerative changes and some neural foraminal changes. AR 136.

In April 2003, she had intermittent IBS symptoms. AR 123. In August 2003, Dr. Davis indicted that Plaintiff possibly had fibromyalgia syndrome. AR 112-114. In November 2003, Dr. Davis assessed chronic headaches with a musculoskeletal component and chronic migraine headaches. He recommended a pain clinic evaluation. AR 106.

On January 16, 2004, Plaintiff underwent an MRI of her cervical spine. AR 179-180. The test revealed reversal of the normal lordotic curve of the cervical spine, mild degenerative disc disease at C5-6 with a left uncovertebral joint osteophyte causing mild compromise of the left C5-6 neural foramen. AR 179-180. X-rays revealed degenerative disc disease at C6-7. AR 182. A negative MRI of the brain was performed the same day. AR 181.

On March 3, 2004, Plaintiff saw Edward L. Auen, Ph.D., M.D., for complaints of headaches and pain. Plaintiff reported that she has headaches all the time, with severe headaches 2-3 times per week. She also complained of generalized muscle pain in her legs, feet, and hands. On examination, she had at least 12 of 18 tender points above and below the waist and on both sides of her body. Dr. Auen made a primary diagnosis of fibromyalgia and recommended numerous medications. He also diagnosed complex headaches that may be a combination of muscle tension headaches and underlying migraine headaches. AR 184-187.

Plaintiff saw William J. Griffiths, M.D., on April 7, 2004. She reported that she was doing pretty well and had only three intermittent episodes of nausea and vomiting. He diagnosed acid peptic disease, probable cause of nausea and vomiting, post cholecystectomy, NKT-cell lymphoma without known recurrence post chemo, and IBS. AR 168.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of lymphoma in remission without recurrence, headaches and fibromyalgia. Plaintiff's impairments caused both exertional and non-exertional limitations. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work. Based on the testimony of the VE and using Medical Vocational Rule 201.28 as a framework, the ALJ determined that Plaintiff was not disabled. AR 17-28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since May 1, 1999; (2) has an impairment or a combination of impairments that is considered "severe" (lymphoma in remission without recurrence, headaches and fibromyalgia) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retains the RFC to perform jobs that exist in significant numbers in the national economy. AR 17-18.

Plaintiff argues that the ALJ (1) erred by finding that Plaintiff was able to perform a full range of sedentary activity; and (2) erred by not providing medical expert testimony to determine Plaintiff's onset date of disability.

**DISCUSSION**

A. ALJ'S RFC Finding

Plaintiff faults the ALJ's RFC finding for two reasons. First, Plaintiff contends that the VE failed to provide the *Dictionary of Occupational Titles* ("DOT") reference for the receptionist and assembler positions, and failed to find any erosion based on the non-exertional impairments. Second, Plaintiff argues that the RFC used at the hearing contradicts the RFC in the opinion because the RFC used in the opinion did not include the non-exertional limitations (i.e., inability to lift five pounds frequently or stand or walk more than one-half hour at a time).

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

*Nonexertional Limitations*

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's nonexertional limitations "significantly limit the range of work" he can perform, mechanical application of the Grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a nonexertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

In his opinion, the ALJ explained that Plaintiff had a combination of severe physical impairments, resulting in both exertional and nonexertional limitations. AR 16. He found that Plaintiff retained the RFC "to perform sedentary work, with the further limitations detailed in the vocational expert testimony." AR 16. The further limitations posed in his hypothetical question included the ability to lift 10 pounds occasionally, the ability to move small objects throughout the workday, and the ability to stand and walk in combination for up to 30 minutes at one time, for a total of two hours in a day. AR 276. So, contrary to Plaintiff's argument that the RFC findings were not consistent, the ALJ incorporated the limitations posed to the VE into his RFC defined in the opinion.

Insofar as Plaintiff contends that she could not have been found disabled based on the Grids because she had significant nonexertional limitations, her argument is without merit. First, it was up to the ALJ to determine whether Plaintiff's nonexertional limitations significantly limited the range of work she could perform. Contrary to her position, sedentary work does not require the ability to lift more "than 10 pounds at a time and occasionally lift[] or carry[] articles like docket files, ledgers and small tools." 20 C.F.R. § 404.1567(a). The ALJ's finding that

Plaintiff could lift 10 pounds occasionally and move small objects frequently throughout the workday is consistent with the definition of sedentary work, and there was no reason to find that these nonexertional limitations significantly limited the available range of sedentary work. Although the ALJ did not phrase his finding in terms of an ability to lift five pounds frequently, sedentary work does not require such an ability and, in any event, there is little difference between the ability to lift five pounds frequently and the ability to "mov[e] small objects throughout the workday." AR 276.

Additionally, although Plaintiff contends that her inability to walk or stand more than 30 minutes at a time somehow compromised the VE's findings, it is certainly a reasonable finding that a large number of sedentary positions are available despite this limitation. Indeed, the definition of sedentary work states, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Similarly, SSR 83-10 states that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Plaintiff's RFC allows for this amount of standing and walking.

Therefore, Plaintiff's argument that her nonexertional limitations significantly limited the range of work available fails. Regardless, the ALJ did not rely exclusively on the Grids. He used the Grids as a framework for his decision and in conjunction with VE testimony.

*DOT*

Social Security Ruling 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the vocational expert to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

The hypothetical question posed to the VE included all of the above limitations. AR 276. Based on this, he testified that Plaintiff could perform the sedentary positions of receptionist and assembler. AR 277. Statewide, there were 10,000 sedentary assembler positions that fit Plaintiff's capabilities and 820,000 receptionist positions. AR 277. The ALJ specifically asked the VE if his classifications of these positions were consistent with the way they are classified in the DOT and the VE responded, "Yes, your honor." The ALJ then asked, "Have you had to make any departures in identifying any of these jobs?" The VE stated, "No, your honor." AR 277-278.

Thus, the VE testified that the identified positions were consistent with the DOT and that he did not make any departures. Given Plaintiff's limitations and the positions identified by the VE, there is no reason to second guess the VE's responses. Plaintiff's argument is without merit.

B. Medical Expert Testimony

Next, Plaintiff argues that the ALJ was required to call a medical expert to determine the onset date of her disability. She explains that she was required to prove disability before her date last insured, which was December 31, 1999. She contends that before her date last insured, she suffered from lymphoma, along with the concurrent conditions of chronic headaches, IBS and pain due to fibromyalgia. Plaintiff argues that it was necessary to obtain a medical expert opinion as to when these "slowly progressive impairments" became disabling.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a).

Plaintiff correctly asserts that in order to qualify for Title II benefits, she was required to show that she was disabled prior to her date last insured of December 31, 1999. In determining the onset date of disability, the ALJ should examine the claimant's allegations, work history and, most importantly, medical records. SSR 83-10. In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the ALJ to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination. *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

In support of her claim, Plaintiff provided records prior to the hearing, as well as on the day of the hearing. AR 201-216. To accommodate Plaintiff's concern that one treating physician had not provided all records, the ALJ left the record open for 20 days to allow Plaintiff to provide additional records, which she did. AR 255-256, 217-250.

When questioned by her attorney during the hearing, Plaintiff testified that in 1999, she suffered from headaches, pain caused by the chemotherapy, and aches that were subsequently diagnosed as fibromyalgia. She further testified that she suffered from IBS prior to her cancer diagnosis. AR 260-262, 269, 272-273.

Despite Plaintiff's attempts to provide adequate evidence, the evidence before the ALJ did not support a finding that Plaintiff suffered from chronic headaches, IBS or pain from fibromyalgia prior to her date last insured. Although Plaintiff testified that these impairments began during or before December 31, 1999, she has not produced any supporting evidence. The only medical evidence from 1999 relates to Plaintiff's treatment for lymphoma, and there are *no* medical records between 2000 and 2002. Pursuant to SSR 83-20 and *DeLorme*, the ALJ attempted to obtain all available medical evidence. Calling a medical expert would have been useless, as there would not have been any pertinent medical records during the time period in question available for review.

Plaintiff was afforded many opportunities to present supporting evidence, but failed to do so. The ALJ left the record open, and he was not required to do more. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Plaintiff could also have submitted evidence to the Appeals Council, but did not do so.

As stated above, it was Plaintiff's duty to prove disability prior to her date last insured. The evidence before the ALJ simply did not demonstrate that she was disabled prior to December 31, 1999, and to the extent the ALJ discusses disability beyond that date, his rulings are superfluous. Therefore, this Court's ruling is limited to the finding that Plaintiff was not disabled prior to December 31, 1999, the only finding necessary for a Title II disability a application.

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff LaDonna Genereux.

IT IS SO ORDERED.

**Dated: October 10, 2006** **/s/ Dennis L. Beck**
3b142a UNITED STATES MAGISTRATE JUDGE